Delaware and Lackawanna Railroad Co. *v.* Blair.

---

# The Delaware and Lackawanna Railroad Company ads. James Blair.

1. At a sheriff's sale of personal property, the maxim *caveat emptor* applies; and if a person is led to bid more for property than it is worth, the court will not grant relief, unless it appear that the bid was obtained by artifice or fraudulent representations.

2. Where it appears, by full and satisfactory proof, that a judgment has been satisfied, the court will order satisfaction to be entered.

On motion to have satisfaction of a judgment entered of record.

OGDEN, J. The affidavits made, and the exhibits marked in this matter, show that, on the 22d of March, 1858, Blair recovered, in this court, a judgment against the company for the sum of $1308.55, besides costs; also, that one John Young had a prior judgment against them in this court for $4047.94, besides costs; that executions were issued, and placed in the hands of the sheriff of the county of Warren, who made levies upon twenty-seven coal cars, loaded with coal, standing on a track in the village of Washington, in that county; that he made sale of the property on the first of June, 1858, and that Mr. Blair became the purchaser of all the said cars, at the bid of $175 for each, and of all the coal at the bid of $2.91 per ton. The amount of the proceeds of the sale was $5157.13.

It also appears that Mr. Young had agreed to take for his judgment the sum of $4000, which, together with the

sheriff's execution fees upon that judgment, made the sum of $4053.70. After deducting that amount from the purchase money due from Blair, there was left the sum of $1103.43 to be applied to his execution. From a statement made by the sheriff, it appeared that, on the day of sale (June 1st, 1858,) after appropriating the surplus in his hands of $1103.43 to Blair's judgment, the balance remaining unpaid upon the same, for principal, interest, and costs, would be $284.92. This, however, is not claimed on either side to be accurate, because the price bid by Mr. Blair for the coal was nominal, he having the privilege of changing the amount of his liability for the coal, by being subsequently charged with such sums as should result from re-sales thereof by him. But there was no such contingency annexed to the purchase of the cars.

By Exhibit A on the part of the company, which also is dated June 1st, 1858, it appears that Mr. Blair acknowledged that he had received the sum of $654.44 on account of his judgment from the sale of the cars, after satisfying the execution in favor of Mr. Young. The application of that amount left due on his execution, for principal, interest, and costs, the sum of $733.91.

By Exhibit C on the part of the company, dated February 8th, 1859, which is a written statement, by Mr. Blair, of sales of the coal, it appears that he charged himself, as of the 20th of July, 1858, with the sum of $339.58, as the net avails of those sales. That sum, deducted from the execution, left the balance unpaid of $394.33, besides interest on $733.91 from the first of June.

An alias *fieri facias* was issued upon Blair's judgment, and placed in the hands of the sheriff of Union, by virtue of which he made a levy upon some property of the company. By another exhibit on the part of the company, which is a receipt given to them by sheriff Halsey, it appears that, on the 22d of February, 1859, he received from the company four hundred and seven dollars and ninety-one cents, as the balance alleged by them to be

due to Mr. Blair on the judgment, and that he also received from them the sum of $35.78 for his costs and expenses on the execution.

It was conceded, on the argument, that the amount paid to the sheriff of Union was sufficient to satisfy Blair's judgment, if he should remain charged with the whole amount bid by him for the cars ; therefore it follows, from the proofs made by the defendants, that the judgment has been paid, and that they are entitled to the order of this court that satisfaction be entered on the record thereof.

But Mr. Blair insists that there was fraud practised in procuring his bid of $175 for each car; that the price was much beyond their value, and that he is entitled to the equitable action of the court for relieving him from the legal effect of his bid and purchase.

A great mass of testimony has been taken, designed to show, in the first place, that the cars were not worth the amount at which he bid them off, and in the second place, that the president of the company had circumvented him in inducing him to make so excessive a bid. I have carefully read and examined all the depositions, but cannot find in them any proof, either that Mr. Jessup practised artifice to induce Mr. Blair to buy the cars, or that he made any fraudulent representations as to their value. The salutary rule in sales of personal property, *caveat emptor*, is applicable to Mr. Blair, and if he was led to offer more for the property than it was worth, he did it with his eyes open. The judgment appears to have been satisfied, and the proper rule should be taken for the clerk to enter satisfaction on the record with costs of this proceeding.